**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**



RECEIVED

10 APR 26 PM 1:57

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, JACKSON

| | | |
|---|---|---|
| **NATASHA BROOKS, Ethel & ISSAC BROOKS, DBA FULL LINE MAINTENANCE, PLUMLINE DINING, Tots and Volunteer Temp ;** <br> **PLAINTIFFS,** | ) <br> ) <br> ) <br> ) <br> ) <br> ) | **CASE NO._____** |
| **VS.** | ) <br> ) <br> ) <br> ) | |
| **WHIRLPOOL, MAYTAG CORPORATION JANICE PAGE HOLLINGSWORTH & GARY HOLLINGSWORTH** | ) <br> ) <br> ) <br> ) | **JURY TRIAL DEMANDED** |
| **DEFENDENTS.** | | |

## COMPLAINT

Plaintiffs Natasha Brooks, Ethel & Isaac Brooks, "Partnership" DBA Full Line
Maintenance, Plum Line Dining, Tots and Volunteer Temp Service hereby allege
and state the following Complaint against Defendents Whirlpool, Maytag
Corporation. (WMC) and Janice Page Hollingsworth (JPH) and for this complaint
Gary Hollingsworth (GH), (hereinafter referred to collectively as "Defendents").

## PARTIES

1. Plaintiffs owned and operated the businesses as a family in the State of
   Tennessee with its principle place of business being at 107 Southwind,
   Jackson, Tennessee 38305.

2. Defendants, Whirlpool is a Michigan Corporation, **North American Appliance Group, Administrative Center, 2000 M63, Benton Harbor, MI 49022-2692,** that purchased the Maytag Corporation which was based in Iowa, with its principle place of business at 25 Dr. F. E. Wright Dr., Jackson, Tennessee 38305.

3. Defendants Janice Page Hollingsworth and Gary Hollingsworth individuals whom resides at 28 Winchester Cove, Jackson, Tennessee 38305 and upon information and belief they are husband and wife.

## JURISDICTION

4. This action is brought under the Federal Racketeer Influence and Corrupt Organization ("RICO") statute, 18 U.S.C. 1961 et seq., and various other Tennessee statutes and common law doctrines. Jurisdiction is vested in this Court by virtue of 28 U.S.C. 1331 and 1332

5. Because claims brought under Tennessee law are so related to Plaintiffs Federal claims, over which the Court has original jurisdiction, that they form part of the same case or controversy under the United States constitution, the Court also has jurisdiction over Plaintiffs Tennessee common law and statutory claims pursuant to 28 U.S.C 1367.

6. All the events and omissions giving rise to the claims stated herein occurred in this District and all Defendants are subject to the personal jurisdiction of this judicial District. Venue is proper in this District and Division pursuant to 28 U.S.C. 1391 and to 18 U.S.C. 1965

## FACTS

7. Plaintiffs doing business in Madison County, Tennessee at all times relevant to this matter.

8. That upon information and belief the Defendants WMC is a foreign corporation, licensed to do business in Tennessee and at all times it owned a manufacturing plant in Jackson, Tennessee and did so at all times relevant to this action.

9. That Defendant Janice Page Hollingsworth (JPH) is a resident of Jackson, Tennessee and upon information and belief no longer employed with Defendant Corporation, while employed as its agent she was the Human Resources Manager at the facility in Jackson, Tennessee, and in charge of certain contractors and suppliers doing business with WMC.

10. That the Defendants are sued jointly and severally.

11. The Plaintiffs entered into a contract December 1993 with the Defendants, which required the Plaintiffs to provide workers at its plant in Jackson, Tennessee.

12. That this contract was put in writing in 2004 but expired, but the parties Continued to do business orally with all contract requirements and provisions being adhered to, constituting a course of dealings.

13. That the Plaintiffs provided the workers as contracted and the Defendants paid the invoices and billings.

14. That Defendants JPH was the agent for WMC assigned to manage the Plaintiff's contract and their WMC actual and constructive Knowledge of These facts, and did allow JPH these duties and compensated her for the Work.

15. That JPH began to assert her power and authority as agent to demand
    Payments from Plaintiffs in violation of its contracts.

16. That these payments were improper, and in violation of their agreement
    Constituting a breach thereof, fraudulent and a breach of her duty.

17. That to maintain Plaintiffs business relationship and contracts Plaintiff
    Reluctantly made the payments to JPH in behalf of WMC under fear of
    Economic duress.

18. That Defendants breach of contract caused great harm to Plaintiffs
    Business.

## IMPROPER CONDUCT

19. Plaintiffs further assert JPH threatened Plaintiff if he, Brooks went over her
    Head to attempt to tell of the acts (extortion), he would be out of a supplier
    And out of business.

20. Plaintiff assert JPH improper conduct, threatened Brooks, if he revealed
    That she, JPH was demanding the payments, she would file false criminal
    Charges (bribery), against Brooks to authorities.

21. Plaintiff asserts, we took her threats seriously and feared she would and
    Could make them become a reality, (twice JPH replaced Plaintiff with its
    Competitor until she got what she demanded).

22. Plaintiff further assert that this conduct forced the Plaintiff to forebear
    Bringing suit and this conduct is separate from Plaintiffs RICO claim.

23. Defendant JPH concealed her demands by demanding that payments be in
    Cash which give cause to forebear bringing this action.

24. Defendants WMC conduct January 8, 2008 (see complaint at 47, 49 and 50)
    Furthered JPH scheme by its actions allowing her threats to be real, and

Certainly, after February 2008 their certain knowledge of the payments

Made to JPH, and WMC chose to ignore and do nothing, JPH remained as an

As an agent until plant ceased its operation (2009) in Jackson, Tennessee.

## INTRODUCTORY ALLEGATIONS AND

## UNJUST ENRICHMENT

25. Plaintiff began doing business with WMC December 6, 1993, JPH was
   Employed as H.R. Manager with responsibility for Plaintiffs relationship with
   WMC.

26. During the fall of 1998, JPH begin to make threats to Plaintiff Brooks
   Demanding a kickback of $2,500.00 cash.

27. JPH stated that, in exchange for payments (kickbacks), she would ensure that
   WMC would keep Plaintiffs as suppliers and she would keep Plaintiffs from
   Being replaced by Plaintiffs competitors.

28. JPH stated that if Plaintiffs refused to make the payments she would make
   Sure we were not a supplier and would terminate us as such.

29. JPH stated that if Plaintiffs ever reported her conduct to WMC senior
   Management or law enforcement, she would falsely accuse Plaintiff of
   bribery, and that would expose Plaintiffs Brooks to criminal prosecution, and
   ensure that Plaintiffs business was terminated as WMC vendor.

30. Plaintiff in October 2007 refused to make any more extortion payments to
   JPH and stayed away from her, and January 2008 she made good on her
   Threats for a second time.

## UNJUST ENRICHMENT

31. Plaintiffs assert that the extorted payments give rise to unjust enrichment
    That is to follow.

32. Defendants JPH and GH the husband demanded March 2003 Plaintiffs make
    Boat house payments in the amount of $2,500.00 (15) payments.

33. Defendants JPH demanded Plaintiff open another new company and GH gave
    Its name as Volunteer Temp Service (VTS) for GH to have a job and
    Demanded we pay him a salary of $2,400.00 a month for six months along
    With rent, utilities, phone, furniture and supplies etc: totaling $40,000.00.

34. That when GH was bored with that JPH demanded that Plaintiffs purchase a
    Business that she had already identified Full Line Maintenance (FLM)
    Demanding $24,000.00.

35. And when he GH got tired of that JPH attempted to sale business back to
    Plaintiff and demanded Plaintiff give her $120,000.00 for the same business
    FLM, Plaintiff dodged her, and shortly thereafter JPH contacted Plaintiff and
    Stated your ass will be out of here if I didn't give her $30,000.00, Plaintiff did
    So reluctantly, July 31, 2003.

36. That JPH on or about August 2004 demanded Plaintiff give her a percentage of
    The business 3% each week (net profit) or Plaintiffs would be replaced as a
    Supplier, this was done for three years at $500.00 plus a week for three years
    Totaling $78,000.00.

37. That Plaintiff pay $25,000.00 at Christmas each December Brooks refused, and
    JPH stated well I guess I can call another service, after that she was paid each
    Year for six (6) years totaling $150,000.00 beginning December 2001.

38. That when Plaintiff stayed away from JPH and not returns or takes her calls
    JPH, threats, "as Plaintiff learned was real" JPH replaced Plaintiff as vendor at

the WMC facility, and when Plaintiff made contact with JPH she demanded
$100,000.00 February 2006, once she was paid Plaintiffs was back in as
Supplier.

39. That JPH made and received demands for trips to Tunica, Mississippi to
    Casinos with hotel rooms, limos, and cash to gamble fall and summer of
    2005, fall of 1999, new year 2002, 2003, and 2006 totaling $80,000.00 for her
    GH and friends.

40. Defendant JPH visited Plaintiff at his home along with James Smith whom
    worked in H.R. dept in fall 2006, an attorney friend happened to come by
    and was there, when JPH left she left a note in my hand asking for $80,000.00
    I gave to my attorney to read.

41. That Plaintiff asserts it made the following payments:

| DATES | AMOUNT |
|-------|--------|
| 2000 | $84,000.00 |
| 2001 | $60,000.00 |
| 2002 | $75,000.00 |
| 2003 | $135,000.00 |
| 2004 | $91,000.00 |
| 2005 | $132,000.00 |
| 2006 | $75,000.00 |
| 2007 | $45,000.00 |

That Plaintiff also made the following in like kind payments to the Defendants

| Boat House on river complaint #32 | $37,500.00 |
|-----------------------------------|------------|
| Purchase of Co. complaint #34 FLM | $24,000.00 |

| | |
|---|---|
| Buy Co.FLM back complaint #35 | $30,000.00 |
| Gary Hollingsworth complaint #33 | $40,000.00 |
| Christmas see complaint #37 | $150,000.00 |
| JPH 3% of business complaint#36 | $78,000.00 |
| Demands see complaint #38 | $100,000.00 |
| Casino trips complaint #39 | $80,000.00 |
| Note demand see complaint#39 | $80,000.00 |

42. That as a result of the acts of the Defendants the Plaintiffs has suffered a loss in the amount of $1,316,500.00 to Plaintiff business. Plaintiffs were out of business one month later.

## NEGLIGENCE

43. That under the doctrine of Agency, master-servant, respondent superior and All other like doctrines, the acts of JPH are imputed to WMC and are Malicious, fraudulent, and oppressive justifying an award of triple Damages.

44. Plaintiff further assert WMC was negligent in its oversight and Management of its employed agent JPH, that it improperly managed her care Of contractors and suppliers and specifically its contract with Plaintiffs.

45. Plaintiffs assert that all acts in this complaint were (a) in the course of JPH Employment as WMC agent and (b) during her work hours (c) and at the WMC facility (d) and demands were made by phone.

46. Defendant JPH would call defendant and always state there is a problem and She would demand that only Isaac Brooks Plaintiff come, some of the

Problems per her was (a) too many Blacks, (b) someone stole something, (c)
Too many injuries, (d) need to discuss some invoices, (e) too much employee
Turnover (f) too many thugs, (g) temps want honor smoke areas, the list just
Go on and on, but when I get there at the facility it wasn't a problem at all
Just a rouse to get Brooks there to make her demands and threats, Plaintiffs
Have always had a great staff but she JPH had to have me to extort.

47. That WMC was informed in the fall of 2005 by phone to Ann Rushing believed
    To be plant manager by Plaintiff Brooks of JPH acts of threats and demands.
    Plant manager stated she would investigate but never heard from her again,
    February 2008 knew of the acts of JPH when the acts were submitted by
    Plaintiff, but continued her employment in her position as H. R. Manager.

48. Plaintiffs further assert negligence of Defendants breach of contract and
    Given the knowledge WMC had of the extortion acts of JPH, WMC acquiesced
    In, furthered, and/or advanced JPH illegal scheme.

49. Plaintiffs assert on January 8, 2008, Plaintiff got information that we were no
    Longer the supplier for WMC after meeting with attorney's between 5 and
    6pm Plaintiff went to WMC to meet with JPH, after a brief discussion, Plaintiff
    Indicated to her he was going to Plant manager, and she stated Plant Manager
    Was not in town or on site, Plaintiff stated I will be going to authorities and
    Report your extortionist acts, she left the meeting for a minute, after
    returning she stated, I am to let you know your services here is no longer
    needed, and I, JPH have spoke to Plant manager, Plaintiff left.

50. JPH then informed Plaintiff she was told, to let me know I would be reported
    To proper authorities for bribery and face criminal charges, before I left the
    Facility.

## CONTRACT BREACH

51. Defendants on January 8, 2008 replaced Plaintiff as supplier without giving the required notice as stated in the contract agreement thereby causing a breach, contract requires 60 day notice (article IV #2), see contract exhibit A plaintiffs were invoicing $60,000.00 weekly at 8 weeks totaling $480,000.00.

52. Defendants did not provide the payments to the Federal Government 940 and 941 and all taxes as required by the agreement (article VIII #2) causing a breach totaling $4,000,000.00.

53. Plaintiffs assert it has caused great harm to the business of Plaintiff due to defendants' actions, Plaintiff seek an award and judgment from Defendants for the breaches in the amount of $4,480,000.00, and complaint #42 $1,316,500.00 for payments demanded totaling $5,796,500.00.

# RICO CLAIMS

## COUNT ONE
## RACKETEER INFLUENCE AND CORRUPT ORGANIZATION ACT
## 18 U.S.C. 1962(c)
## (JPH)

54. Plaintiffs reallege and restates paragraph 1-53.

55. At all relevant times, Plaintiffs Brooks constituted an "enterprise," within the meaning of 18 U.S.C. 1961(4) and 1962(c), in that it was a partnership.

(a) JPH is an individual "person," within the meaning of18 U.S.C. 1961(3)
and 1962(c), who associated with and/or participated in the conduct of
said enterprise's affairs.

(b) Between December 1998 and January 2008, JPH conducted,
participated in, engaged in, conspired to engage in, or aided and
abetted, the conduct of the affairs of the enterprise through a pattern of
racketeering activity within the meaning of 18 U.S.C. 1961(1), 1961(5)
and 1962(c).JPH' pattern of racketeering activity consisted of:

 (i)  extortion (see complaint 7-53) that was designed to extract direct
or indirect Personal rewards from Plaintiffs business, if Plaintiff
refused to succumb to JPH demands for personal compensation,
she would cause WMC to terminate Plaintiff or he would engage
in retaliatory actions against Plaintiffs; all or some said acts of
extortion were in violation of 18 U.S.C. 1951

 (ii)  JPH knowingly used intimidation and threatens to corruptly
persuade Plaintiffs, or attempted to do so or engaged in
misleading conduct toward Plaintiffs, with intent to (i) influence,
delay, or prevent the testimony of Plaintiffs in an official
proceeding concerning JPH illegal actions, or to hinder, delay, or
prevent Plaintiffs communication to a law enforcement officer or
judge of the United States information relating to JPH commission
of a federal offense; WMC committed such acts in violation of 18
U.S.C. 1512;

 (iii)  a scheme to defraud (see complaint 7-53) that was knowingly and
intentionally devised by JPH to obtain Plaintiffs money or
property by means of false or fraudulent pretenses,
representation, or promises; and, for the purpose of executing
such scheme, JPH placed or caused to be placed in mail, matter
that furthered the scheme to defraud (including but not limited

to paychecks JPH caused Plaintiffs to issue to GH the husband); JPH committed mail fraud, in violation of 18U.S.C. 1341.

(iv)  knowingly executing, or attempting to execute, a scheme or artifice to obtain money under the custody or control of a financial institution by means of false or fraudulent pretenses or representation (including but not limited to all paychecks that JPH caused Plaintiffs to issue to GH described in complaint 33-35) and Caused Plaintiffs to pay $1,316,500.00 from personal and business Funds, (described in complaint #42) in violation of 18 U.S.C. 1344;

(v)  travelling in interstate and foreign commerce or using the mail and Wire or any facility in interstate or foreign commerce with intent to distribute the proceeds of extortion or otherwise promote, Manage, establish, or carry on a scheme to extort and thereafter, performed or attempted to perform said acts, in violation of 18 U. S. C. 1952.

These acts all occurred after the effective date of RICO and more than two   such acts occurred within ten years of one another.

56.  In the alternative to paragraph 55, 57 at all relevant times, some or all of the Following individuals constituted an "enterprise," within the meaning of 18 U.S.C.  1961(4) and 1962(c), in that they were "a group of individuals Associated in fact": Plaintiffs and WMC.

(a).  JPH is an individual "person," within the meaning of 18 U.S.C. 1961(3) and 1962(c), who associated with and/or participated in the conduct of said Enterprise's affairs.

(b).  Between December 1993 and January 2008, JPH conducted, participated In, engaged in, conspired to engage in, or aided and abetted, the conduct Of the affairs of the enterprise through a pattern of racketeering activity Within the meaning of 18 U.S.C. 1961(1), 1961(5) and 1962(c). JPH pattern

Of racketeering activity consisted of:

(i)     extortion (see complaint 7-53) that was designed to extract direct or indirect Personal rewards from Plaintiffs business, if Plaintiff refused to succumb to JPH demands for personal compensation, she would cause WMC to terminate Plaintiff or he would engage in retaliatory actions against Plaintiffs; all or some said acts of extortion were in violation of 18 U.S.C. 1951

(ii)    JPH knowingly used intimidation and threatens to corruptly persuade Plaintiffs, or attempted to do so or engaged in misleading conduct toward Plaintiffs, with intent to (i) influence, delay, or prevent the testimony of Plaintiffs in an official proceeding concerning JPH illegal actions, or to hinder, delay, or prevent Plaintiffs communication to a law enforcement officer or judge of the United States information relating to JPH commission of a federal offense; WMC committed such acts in violation of 18 U.S.C. 1512;

(iii)   a scheme to defraud (see complaint 7-53) that was knowingly and intentionally devised by JPH to obtain Plaintiffs money or property by means of false or fraudulent pretenses, representation, or promises; and, for the purpose of executing such scheme, JPH placed or caused to be placed in mail, matter that furthered the scheme to defraud (including but not limited to paychecks JPH caused Plaintiffs to issue to GH the husband); JPH committed mail fraud, in violation of 18U.S.C. 1341.

(iv)    knowingly executing, or attempting to execute, a scheme or artifice to obtain money under the custody or control of a financial institution by means of false or fraudulent pretenses or representation (including but not limited to all paychecks that JPH caused Plaintiffs to issue to GH described in complaint 33-35) and Caused Plaintiffs to pay $1,316,500.00 from personal and business Funds, (described in complaint #42) in violation of 18 U.S.C. 1344;

(v)     travelling in interstate and foreign commerce or using the mail

> and Wire or any facility in interstate or foreign commerce with
> intent to distribute the proceeds of extortion or otherwise
> promote, Manage, establish, or carry on a scheme to extort and
> thereafter, performed or attempted to perform said acts, in
> violation of 18 U. S. C. 1952.

These acts all occurred after the effective date of RICO and more than two such
acts occurred within ten years of one another.

57.     In the alternative to paragraphs 55 and 57 at all relevant times, some or all
of the following individuals constituted an "enterprise," within the meaning of 18
U.S.C 1961(4) and 1962(c), in that they were "a group of individuals associated in
fact": JPH and GH husband.

- (a).  JPH is an individual "person," within the meaning of 18 U.S.C. 1961(3) and
  1962(c), who associated with and/or participated in the conduct of said
  Enterprise's affairs.

- (b).  Between December 1993 and January 2008, JPH conducted, participated
  In, engaged in, conspired to engage in, or aided and abetted, the conduct
  Of the affairs of the enterprise through a pattern of racketeering activity
  Within the meaning of 18 U.S.C. 1961(1), 1961(5) and 1962(c). JPH pattern
  of racketeering activity consisted of:

  - (i)    extortion (see complaint 7-53) that was designed to extract direct
    or indirect Personal rewards from Plaintiffs business, if Plaintiff
    refused to succumb to JPH demands for personal compensation,
    she would cause WMC to terminate Plaintiff or he would engage
    in retaliatory actions against Plaintiffs; all or some said acts of
    extortion were in violation of 18 U.S.C. 1951

  - (ii)   JPH knowingly used intimidation and threatens to corruptly
    persuade Plaintiffs, or attempted to do so or engaged in
    misleading conduct toward Plaintiffs, with intent to (i) influence,
    delay, or prevent the testimony of Plaintiffs in an official

proceeding concerning JPH illegal actions, or to hinder, delay, or prevent Plaintiffs communication to a law enforcement officer or judge of the United States information relating to JPH commission of a federal offense; WMC committed such acts in violation of 18 U.S.C. 1512;

(iii)    a scheme to defraud (see complaint 7-53) that was knowingly and intentionally devised by JPH to obtain Plaintiffs money or property by means of false or fraudulent pretenses, representation, or promises; and, for the purpose of executing such scheme, JPH placed or caused to be placed in mail, matter that furthered the scheme to defraud (including but not limited to paychecks JPH caused Plaintiffs to issue to GH the husband); JPH committed mail fraud, in violation of 18U.S.C. 1341.

(iv)    knowingly executing, or attempting to execute, a scheme or artifice to obtain money under the custody or control of a financial institution by means of false or fraudulent pretenses or representation (including but not limited to all paychecks that JPH caused Plaintiffs to issue to GH described in complaint 33-35) and Caused Plaintiffs to pay $1,316,500.00 from personal and business Funds, (described in complaint #42) in violation of 18 U.S.C. 1344;

(v)    travelling in interstate and foreign commerce or using the mail and Wire or any facility in interstate or foreign commerce with intent to distribute the proceeds of extortion or otherwise promote, Manage, establish, or carry on a scheme to extort and thereafter, performed or attempted to perform said acts, in violation of 18 U. S. C. 1952.

These acts all occurred after the effective date of RICO and more than two such acts occurred within ten years of one another.

58.    At all relevant times, the enterprises alleged in paragraphs 55 through 57 were engaged in, and their activities affected, interstate commerce and foreign commerce.

59.     All of the predicate acts described in paragraphs 55 through 57 were related so as to establish a pattern of racketeering activity, within the meaning of 18 U.S.C. 1962 ;( c), in that their common purpose was to extort and defraud Plaintiffs; their common result was to extort and defraud Plaintiffs of money and like kind JPH and GH each personally or through their agents or agents directly or indirectly, participated in all of the acts and employed the same or similar methods of commission; Plaintiffs was the victim of the acts of racketeering; and/or the acts of racketeering were otherwise interrelated by distinguishing characteristics and were not isolated events.

60.     All the predicate acts described in paragraphs 55 through 57 were continuous so as to form a pattern of racketeering activity in that:

(a) JPH engaged in the predicate acts over a substantial period of time; or

(b) The patterns of racketeering activity engaged in by JPH continue or Threatens to continue because the conduct has become a regular way of conducting JPH on-going business activities.

61.     As a direct and proximate result of, and by reason of, the activities of JPH, and her conduct in violation of 18 U.S.C. 1962( c) Plaintiffs have been injured in their business or property, within the meaning of 18 U.S.C.1964(c) .Among other things, Plaintiffs have suffered damages to the extent JPH extorted kickback payments from Plaintiffs. Plaintiffs are, therefore, entitled recover threefold the damage they have sustained together with the cost of the suit, including reasonable attorney's and experts fees.

**COUNT TWO**
**RICO ACTS**
**18 U.S.C. 1962(C)**

## (DEFENDANT GH)

62.  Plaintiff realleges and restates paragraphs 1-58.

63.  At all relevant times, some or all of the following individuals constituted an "enterprise," within the meaning of 18 U.S.C. 1961(4) and 1962(c), in that they were "a group of individuals associated in fact": JPH and GH.

(a)  GH is an individual "person," within the meaning of 18 U.S.C. 1961(3) and 1962(c), who associated with and/or participated in the conduct of said enterprise's affairs.

(b)  Between December 1998 and January 2008, GH conducted, participated in, engaged in, conspired to engaged in, or aided and abetted, the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. 1961(1), 1961(5) and 1962(c), pattern of racketeering activity consisted of:

   (i)     extortion (see complaint 7-53) that was designed to extract direct or indirect Personal rewards from Plaintiffs business, if Plaintiff refused to succumb to JPH demands for personal compensation, she would cause WMC to terminate Plaintiff or he would engage in retaliatory actions against Plaintiffs; all or some said acts of extortion were in violation of 18 U.S.C. 1951

   (ii)    JPH knowingly used intimidation and threatens to corruptly persuade Plaintiffs, or attempted to do so or engaged in misleading conduct toward Plaintiffs, with intent to (i) influence, delay, or prevent the testimony of Plaintiffs in an official proceeding concerning JPH illegal actions, or to hinder, delay, or prevent Plaintiffs communication to a law enforcement officer or judge of the United States information relating to JPH commission of a federal offense; WMC committed such acts in violation of 18 U.S.C. 1512;

(iii)    a scheme to defraud (see complaint 7-53) that was knowingly and intentionally devised by JPH to obtain Plaintiffs money or property by means of false or fraudulent pretenses, representation, or promises; and, for the purpose of executing such scheme, JPH placed or caused to be placed in mail, matter that furthered the scheme to defraud (including but not limited to paychecks JPH caused Plaintiffs to issue to GH the husband); JPH committed mail fraud, in violation of 18U.S.C. 1341.

(iv)    knowingly executing, or attempting to execute, a scheme or artifice to obtain money under the custody or control of a financial institution by means of false or fraudulent pretenses or representation (including but not limited to all paychecks that JPH caused Plaintiffs to issue to GH described in complaint 33-35) and Caused Plaintiffs to pay $1,316,500.00 from personal and business Funds, (described in complaint #42) in violation of 18 U.S.C. 1344;

(v)    travelling in interstate and foreign commerce or using the mail and Wire or any facility in interstate or foreign commerce with intent to distribute the proceeds of extortion or otherwise promote, Manage, establish, or carry on a scheme to extort and thereafter, performed or attempted to perform said acts, in violation of 18 U. S. C. 1952.

These acts all occurred after the effective date of RICO and more than two such acts occurred within ten years of one another.

64.    At all relevant times, the enterprise alleged in paragraph 63 was engaged in, and their activities affected, interstate commerce and foreign commerce.

65.    All of the predicate acts described in paragraphs 63 were related so as to establish a pattern of racketeering activity, within the meaning of 18 U.S.C 1962(c), in that their common purpose was to extort and defraud Plaintiffs; their common result was to extort and defraud Plaintiffs of money; JPH and GH, each

personally or through their agents or agents directly or indirectly, participated in all of the acts and employed the same or similar methods of commission; Plaintiffs was the victim of the acts of racketeering; and/or the acts of racketeering were otherwise interrelated by distinguishing characteristics and were not isolated events.

66.     All of the predicate acts described in paragraph 63 were continuous so as to form a pattern of racketeering activity in that GH engaged in the predicate acts over a substantial period of time.

67.     As a direct and proximate result of, and by reason of, the activities of GH, and his conduct in violation of 18 U.S.C. 1962(c), Plaintiffs have been injured in their business or property, within the meaning of 18 U.S.C.1964(c). Among other things Plaintiffs have suffered damages to the extent JPH extorted kickback payments from Plaintiffs. Plaintiffs are, therefore, entitled to recover threefold the damage they have sustained together with the cost of the suit, including reasonable attorney's and expert's fees.

## COUNT THREE
## RICO ACT
## 18 U.S.C. 1962(C)
## (WMC DEFENDANT)

68.     Plaintiff realleges and restates paragraph 1-67.

69.     At all relevant times, some or all of the following individuals constituted an "Enterprise," within the meaning of 18 U.S.C. 1961(4) and 1962(c), in that they were "a group of individuals associated in fact": WMC, and Plaintiffs.

(a)     WMC is an individual "person," within the meaning of 18 U.S.C. 1961(3) and 1962(c), who associated with and/or participated in the conduct of said enterprise's affairs.

(b)     On January 8, 2008 – February 2008 WMC conducted, participated in, engaged in, conspired to engage in, or aided and abetted, the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. 1961(1), 1961(5), 1962(c)and 1962 (d) . WMC's pattern of racketeering activity consisted of:

   (i)     knowingly using intimidation and threats to corruptly persuade Plaintiff, or attempted to do so, or engaged in misleading conduct toward Plaintiff, with intent to influence, delay, or prevent the testimony of Plaintiff in an official proceeding concerning JPH and/or GH illegal actions; or hinder, delay, or prevent Plaintiffs communication to a law enforcement officer or judge of the United States information relating to JPH commission or possible commission of a federal offense; WMC committed such acts in violation of law (paragraphs 47-50);

   (ii)    extortion (see paragraphs 47-50) in that WMC threats of wrongful use of actual or threatened fear of criminal prosecution on January 2008 against Plaintiffs; and

   (iii)   knowingly after holding the acts of its agent (extortion) and allowing Plaintiffs to be dismissed as suppliers by JPH furthered the threats to be real;

   (iv)    WMC wire fraud, with the knowledge of the threats being made at the WMC facility and the extortion at its facility; and

   (v)     WMC knowledge of the acts of JPH doing the course of employment at the WMC facility.

## COUNT FOUR

### RICO ACT

### 18 U.S.C. 1962(D)

### (CONSPIRACY-GH)

70. Plaintiffs realleges and restates paragraphs 1-69

71. In the alternative to Count Two, GH conspired with JPH his Wife to conduct or
    Participate, direct or indirectly, in the conduct of the affairs of the enterprise
    Through a pattern of racketeering activity (see 52-54) in violation of 18 U.S.C.
    1962(d). In particular, GH intended to further an endeavor of JPH which, if
    Completed, would satisfy all of the elements of a substantive RICO criminal
    Offense and adopted the goal of furthering or facilitating the criminal
    Endeavor.

72. Plaintiffs were injured by GH overt acts that are acts of racketeering or
    Otherwise, unlawful under the RICO statue:

    (a)    a scheme to defraud that was knowingly and intentionally devised by
           JPH and furthered by GH to obtain Plaintiffs money and like kind by
           means of  false or fraudulent pretenses, representations, or
           promises; and for the purpose of executing such scheme, GH placed
           or foreseeably caused to be placed in a post office, mail matter that
           furthered the scheme to defraud.

    (b)    knowingly executing, or attempting to execute, a scheme or artifice
           to obtain money under the custody or control of a financial
           institution by means of false or fraudulent pretenses or
           representations (including but not limited to all Plantiffs paychecks
           endorsed by GH, violation of 18 U.S.C. 1344

(c)     travelling in interstate and foreign commerce or using the mail or any

facility in interstate or foreign commerce with intent to distribute the

Proceeds of extortion or otherwise promote, manage, establich, or

carry on a scheme to extort and thereafter performed or attempted

to perform said acts in violation of 18 U.S.C 1952

73.     As a direct and proximate result of, and by reason of, the activities of GH
and his conduct in violation of 18 U.S.C 1962 (d), the Plaintiffs have been injured
in their business or property, within the meaning of 18 U.S.C. 1964 (c).  Among
other things, Plaintiffs have suffered damages to the extent JPH extorted kickback
payments from Plaintiffs.  Plaintiffs are, therefore, entitled to recover threefold
the damages they have sustained together with the cost of the suit, including
reasonable attorneys' and experts' fees.

## COUNT FIVE

## RICO ACT

## 18 U.S.C. 1962(d)

## (Conspiracy-WMC)

74.     Plaintiffs realleges and restates paragraphs 1-73.

75.     In alternative to Count Three, WMC conspired with JPH and/or GH to
conduct or participate, directly, or indirectly, in the conduct of the affairs of the
enterprises through a pattern of racketeering activity (as described in paragraphs
47-50) in violation of 18 U.S.C. 1962(d).  WMC intended to further an endeavor of
JPH and/or GH which, if completed, would satisfy all of the elements of a
substantive RICO criminal offense and adopted the goal of furthering or
facilitating the criminal endeavor.  JPH was not acting within the scope of her

employment when she extorted Plaintiffs silence through threats and intimidation and deterred Plaintiffs from reporting JPH and GH illegal actions to law enforcement.  GH was never an employee of WMC.  By its words and actions, manifest in WMC's threats and conspiracy, WMC agreed with JPH and/or GH criminal scheme to extort Plaintiffs silence through intimidation, and to deter Plaintiffs from reporting JPH and/or GH illegal actions to law enforcement.

76.     Plaintiffs were injured by WMC overt acts in furtherance of JPH and/or GH illegal scheme and said overt acts were acts of racketeering or otherwise unlawful under RICO statute and 18 U.S.C. 1512.

### COUNT SIX

### NEGLIGENT SUPERVISION

### (WMC)

77.     Plaintiffs reallege and restate paragraphs 1-76.

78.     WMC had a duty and responsibility to supervise JPH by, among other things:

(a)     failing to respond reasonably to Plaintiffs disclosures on January 8, 2008 and February 2008, that JPH had been extorting monies and like kind from Plaintiffs; and

(b)     failing to stop JPH from engaging in retaliatory actions against Plaintiffs in response to Isaac Brooks Plaintiff discloser of JPH illegal conduct in February 2008.

79.     As a direct and proximate result of WMC's negligent supervision, or breach of its duty to supervise, Plaintiffs have incurred a loss and damages in excess of over ($1, 000, 000, 00).

## COUNT SEVEN

## NEGLIGENT RETENTION

## (WMC)

80.   Plaintiffs realleges and restates paragraph 1-79.

81.   WMC's failure to adequately supervise JPH was so grossly negligent as to indicate a wanton disregard for the rights of Plaintiffs. As a result, Plaintiffs are entitled to an award of punitive damages against WMC.

82.    JPH unfitness was known by WMC, February 2008, and at all times thereafter; nonetheless, JPH was retained as H.R. manager for WMC.

83.    As a direct and proximate result of WMC's negligent retention of JPH, Plaintiffs have incurred a loss and damages in excess of one million dollars ($1,000,000.00) and WMC's retention of JPH after January and February 2008 was so grossly negligent as to indicate a wanton disregard for the rights of Plaintiffs. As a result Plaintiffs are entitled to an award of punitive damages against WMC.


WHEREFORE, PREMISES CONSIDERED, THE PLAINTIFFS PRAY:

   a.  That it be allowed to file this complaint.

   b.  That both Defendants be served according to law.  That they be required to give answer to complaint.

   c.  That a jury be impaneled to hear this complaint and proceeding on the Courts docket.

   d.  That following the hearing judgement be entered on behalf of the Plaintiffs against Defendants WMC and JPH, in the amount prayed.

   e.  That the Plaintiffs be given all other relief to which it may be entitled and that proof may dictate and attorney fees.

RESPECTFULLY SUBMITTED THIS _____ DAY OF _____ THE YEAR 2010.

Pro se Isaac Brooks

107 Southwind

Jackson, Tn. 38305

Phone (731)225-5082 or (731)695-3470