IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

ISAAC BROOKS d/b/a TOTS,

    Plaintiff,

v.                                                                         No. 10-1098

WHIRLPOOL CORPORATION, et al.,

    Defendants.

---

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

---

    This matter was initially brought on April 26, 2010 by *pro se* Plaintiffs, Natasha, Ethel and Isaac Brooks d/b/a Full Line Maintenance, Plum Line Dining, Tots and Volunteer Temp Service, against Whirlpool Corporation ("Whirlpool"), Maytag Corporation ("Maytag"), Janice Page Hollingsworth and Gary Hollingsworth. The complaint alleged unjust enrichment, negligence, breach of contract, negligent supervision, negligent retention and violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* (RICO) arising from a service agreement entered into on December 9, 2004 between Temp Owned Temporary Service ("T.O.T.S.") and Maytag.[1] In an amended complaint filed May 20, 2010, the parties were identified as *pro se* Plaintiff Isaac Brooks ("Brooks") d/b/a TOTS and Defendants Whirlpool, Janice Page Hollingsworth and Gary Hollingsworth. The amended pleading alleged RICO violations, negligent supervision, negligent retention and breach of contract. In December 2010, the Plaintiff retained counsel. Before the Court is the motion of the Defendants to dismiss this action pursuant to Rule 12(b)(6) of the

---

[1] According to the amended complaint, Whirlpool purchased Maytag at some time between 2004 and 2006. (Am. Compl. ¶ 9.)

Federal Rules of Civil Procedure.

The Rule permits the Court to dismiss a complaint, or portions thereof, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to survive a Rule 12(b)(6) motion, the plaintiff "must allege facts that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level' and to 'state a claim to relief that is plausible on its face.'" Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 609 (6th Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)) (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "And although [the Court] must accept all well-pleaded factual allegations in the complaint as true, [it] need not 'accept as true a legal conclusion couched as a factual allegation.'" Hensley Mfg., 579 F.3d at 609 (quoting Twombly, 550 U.S. at 555, 127 S. Ct. 1955)). While in most cases the court is limited to the pleadings in determining a Rule 12(b)(6) motion, it "may take judicial notice of other court proceedings without converting the motion into one for summary judgment." Buck v. Thomas M. Cooley Law Sch., 597 F.3d 812, 816 (6th Cir.), *cert. denied*, ___ U.S. ___, 131 S. Ct. 200, 178 L. Ed. 2d 44 (2010).

The basis for the instant motion is claim preclusion, or *res judicata*. "Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." New Hampshire v. Maine, 532 U.S. 742, 748, 121 S. Ct. 1808, 1814, 149 L. Ed. 2d 968 (2001), *reh'g denied*, 533 U.S. 968, 122 S. Ct. 10, 150 L. Ed. 2d 793 (2001). "The Full Faith and Credit Clause

of the U.S. Constitution and its implementing statute, 28 U.S.C. § 1738, require federal courts to give preclusive effect to state-court judgments." McCoy v. Michigan, 369 F. App'x 646, 649 (6th Cir. 2010).  The court is to "give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered[.]" Id.  The federal court is to look to the law of the state in which the judgment was rendered in determining the extent of the preclusive effect of the prior state court ruling.  Heyliger v. State Univ. & Cmty. Coll. Sys. of Tenn., 126 F.3d 849, 851-52 (6th Cir. 1997), *cert. denied*, 522 U.S. 1117, 118 S. Ct. 1054, 140 L. Ed. 2d 117 (1998); Theriot v. HSBC Bank, No. 10-CV-11617, 2010 WL 5390177, at *3 (E.D. Mich. Dec. 22, 2010).

In Tennessee, "[t]he doctrine of *res judicata* bars a second suit between the same parties on the same cause of action with respect to all the issues which were or could have been brought in a former suit." Barnett v. Milan Seating Sys., 215 S.W.3d 828, 834-35 (Tenn. 2007).  "A plaintiff may not, by disclaiming or failing to present a particular fact or theory, preserve such fact or theory to be used as a ground for a second suit." Id. at 835.

> In Tennessee, to successfully assert a *res judicata* defense, the party must demonstrate (1) that a court of competent jurisdiction rendered the prior judgment, (2) that the prior judgment was final and on the merits, (3) that both proceedings involved the same parties or their privies, and (4) that both proceedings involved the same cause of action.

Hanger Prosthetics & Orthotics E., Inc. v. Henson, 299 F. App'x 547, 552 (6th Cir. 2008) (citing Gerber v. Holcomb, 219 S.W.3d 914, 917 (Tenn. Ct. App. 2006)) (internal quotation marks omitted).

The state suit at issue was filed by T.O.T.S.," "a Tennessee Corporation doing business as same in Madison County, Tennessee at all times relevant to this matter[,]" against Whirlpool and Janice Page in the Circuit Court of Madison County, Tennessee at Jackson on February 4, 2008.

(Mem. in Supp. of Def.'s Mot. to Dismiss, Ex. 1 (State Ct. Compl.) at 1.)  The "Complaint to Recover Improper Payments," averred that the plaintiff entered into a contract with Whirlpool and Page to provide temporary workers at the former's Jackson plant. (Id. at 1-2.)  The contract expired after a period of time, but, it was alleged, the parties continued to do business orally, adhering to the requirements and provisions of the contract, creating a course of dealing. (Id. at 2.)  T.O.T.S. provided workers in accordance with the contract and Whirlpool paid the invoices for plaintiff's services. (Id.)  At some point, Page, an agent of Whirlpool assigned to manage the contract, allegedly began to demand improper payment from T.O.T.S. in violation of the contract. (Id.) T.O.T.S. asserted that Whirlpool was negligent in its oversight and management of Page, which was the proximate cause of losses incurred by the plaintiff in making improper payments from 2000 to 2007 totaling $554,000.00. (Id. at 3-4.)  The plaintiff sought judgment in the amount paid to Page. (Id. at 4.)

In the state case, Brooks submitted an affidavit in which he averred that he was the original founder of TOTS,[2] which was incorporated in 1994 and whose corporate charter expired in 1998. (Reply in Supp. of Defs.' Mot. to Dismiss, Ex. 2 (Aff. of Isaac Brooks) ¶¶ 1-2.)  He also maintained therein that he continued to do business as TOTS after the corporate charter expired and that, when the contract at issue was entered into, he was doing business as TOTS, although there was no "TOTS Corporation." (Id. ¶¶ 3-4.)

In an order entered October 7, 2008, Circuit Judge Donald H. Allen dismissed the state action with prejudice on the grounds that T.O.T.S., Inc.'s corporate charter had been revoked in 1998

---

[2]In the affidavit, Brooks referred to the plaintiff in the state case as "TOTS" rather than "T.O.T.S."

4

by the Tennessee Department of Revenue and that, therefore, it was not authorized to do business in the state at the time of the contract. (Mem. in Supp. of Def.'s Mot. to Dismiss, Ex. 2 (Order Granting Mot. to Dismiss) at 1-2.) The circuit judge further found it would be improper to permit the corporate plaintiff to attempt a substitution of "Isaac Brooks, formerly doing business as TOTS" as the real party in interest because "[t]he attempted substitution some ten (10) years after its charter was revoked would circumvent the statute and thwart the sound public policy embodied in [Tennessee Code Annotated §] 48-24-202(c)." (Id. at 2; Reply in Supp. of Def.'s Mot. to Dismiss, Ex. 1 (Op. of Ct. of App. of Tenn. at Jackson) at 1.) The statute provides that "[a] corporation administratively dissolved continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs . . . and notify claimants . . . ." Tenn. Code Ann. § 48-24-202(c).[3]

---

[3]Other Tennessee courts have reached similar conclusions. In KHB Holdings, Inc. v. Duncan, No. E2002-02062-COA-R3CV, 2003 WL 21488268 (Tenn. Ct. App. June 25, 3003), *app. denied* (Dec. 22, 2003), the plaintiff brought an action for breach of contract relating to the construction of a residence. KHB Holdings, 2003 WL 21488268, at *1. The court found that the company's charter had been revoked prior to the inception of the contract and denied its motion to substitute its sole shareholder as the plaintiff, stating that

> [w]hen a corporation is administratively dissolved, the assets of the corporation pass to its shareholders. Likewise, any causes of action belonging to the corporation may be pursued by its shareholders. . .
>
> Once a corporation has been administratively dissolved, it may not carry on any business except that necessary to wind up and liquidate its business and affairs and notify claimants. Tenn. Code Ann. § 48-24-202(c). . . . In effect, if KHB acquired a cause of action it did so in violation of state law prohibiting it from continuing to do business. Thus, while property belonging to the corporation [on the date its charter was revoke] may have passed to its shareholder, . . . the corporation [on the date of the contract at issue] was prohibited from entering into the contract and thus acquiring the cause of action at hand. In effect, there was no cause of action of the corporation for [the shareholder] to pursue as a result of [the] purported contract [entered into after dissolution].

TOTS appealed, arguing that, after the dissolution of its corporate status, Brooks simply chose to operate as a sole proprietorship and that he was so acting at the time of the contract. (Reply in Supp. of Def.'s Mot. to Dismiss, Ex. 1 (Op. of Ct. of App. of Tenn. at Jackson) at 5.) The decision of the circuit court was affirmed. (Id.)

In the instant complaint, as amended, Brooks asserted that he entered into a contract in December 2004 with Whirlpool that expired in 2006, although the parties operated under the terms thereof until 2008. (Am. Compl. ¶¶ 62-63.) Throughout the business relationship, Page, by that time known as Janice Page Hollingsworth, was alleged to have demanded kickbacks and other monetary enumerations from him in exchange for maintaining and protecting the relationship. (Id. ¶¶ 10-11.) According to Brooks, she told him that if he reported her conduct she would falsely accuse him of bribing the company. (Id. ¶ 13.) In response to Ms. Hollingsworth's threats, Brooks paid her, as well as her husband, Defendant Gary Hollingsworth, in excess of $1 million for a period ending in 2007. (Id. ¶¶ 14-15, 23.) The Plaintiff also placed Mr. Hollingsworth on his payroll and paid him as if he were a TOTS employee. (Id. ¶ 15.) On these alleged facts, Brooks asserted in his amended complaint that the Hollingsworths had violated RICO, that Whirlpool had negligently supervised and retained Ms. Hollingsworth and that she and Whirlpool had breached the contract

---

\*   \*   \*

> KHB, by attempting to enter into a contract with the Duncans more than two years after its charter had been revoked, was carrying on corporate business after dissolution, conduct that was clearly in violation of Tenn[essee] Code Ann[otated] § 48-24-202(c). To allow [the shareholder] to be substituted for KHB and pursue this claim against the Duncans would circumvent the statute and thwart the sound public policy embodied in the statute.

Id. at *2-3 (internal quotation marks and citations omitted).

6

with TOTS entered into in December 2004.

It appears to the Court that the first requirement for *res judicata*, that a prior judgment was rendered by a court of competent jurisdiction, is not at issue here. In response to the dispositive motion, the Plaintiff maintains that dismissal of the state action was not on the merits, thereby challenging satisfaction of the second requirement. Rather, he submits, the state court dismissed his case based on the purely procedural question of TOTS' standing to bring suit on the contract without reaching the underlying merits.

"In Tennessee, any dismissal of a claim other than a dismissal for lack of jurisdiction, lack of venue, or for lack of an indispensable party operates as an adjudication upon the merits, unless the trial court specifies otherwise in its order for dismissal." Creech v. Addington, 281 S.W.3d 363, 378 (Tenn. 2009) (internal quotation marks omitted). "While some discretion is given to the court to specify in an involuntary dismissal order . . . that the order does not operate as an adjudication on the merits, no such discretion is given to the court when dismissing a claim or case based on a failure to state a claim." Bernard v. Metropolitan Gov't of Nashville/Davidson Cnty., No. M2009-00812-COA-R3-CV, 2010 WL 3033798, at *9 (Tenn. Ct. App. Aug. 3, 2010), *app. denied* (Dec. 7, 2010); *see also* Creech, 281 S.W.3d at 378 (order granting motion to dismiss for failure to state a claim is a decision on the merits). Here, the state court gave no indication that its decision was not intended to be an adjudication on the merits. Instead, the court's order granted the defendant's motion to dismiss on the grounds that the plaintiff "cannot state a cause of action." (Mem. in Supp. of Def.'s Mot. to Dismiss, Ex. 2 (Order Granting Mot. to Dismiss) at 1-2.) Thus, the Court must conclude that the prior judgment was on the merits. The Court finds unavailing Brooks' argument that dismissal of this action is improper because the state court never considered the merits of his underlying

7

claims. As the Sixth Circuit Court of Appeals articulated in <u>Hooker v. Federal Election Commission</u>, 21 F. App'x 402 (6th Cir. 2001), "[i]t is irrelevant that the district court did not reach the underlying merits of [the plaintiff's prior case], because the court reached the merits of the issue in question -- namely, whether [the plaintiff] had standing to sue in the case[;] . . . [t]he principles of *res judicata* apply to questions of jurisdiction as well as to other issues, and therefore a decision may have preclusive effect even if the decision is not made on the merits." <u>Hooker</u>, 21 F. App'x at 405 n.2 (internal citations and quotation marks omitted).

Brooks also takes issue with the third requirement, suggesting that "TOTS" and "T.O.T.S." are separate entities and, therefore, not privies. He claims in his response to the dispositive motion as follows:

> Plaintiff [Brooks] started TOTS as a sole proprietor December 6, 1993 with Defendants being their initial client.
>
> In 1994, other family members formed a corporation (T.O.T.S Inc.). Plaintiff never knew that T.O.T.S. Inc. was not a corporation at the time of the prior case. (T.O.T.S INC. and TOTS were two different businesses).
>
> Plaintiff was not on the corporation charter nor did he participate in the corporation. Plaintiff was simply acting in a representative capacity (as agent) in prior case, Plaintiff did have a legal claim as representative of T.O.T.S Inc. Plaintiff was not owner of T.O.T.S. Inc., but founder of TOTS, and also owner of Full Line Maintenance, and Plumb line entertainment complex, other businesses of which were victims of the acts of Defendant's agent [Janice Page Hollingsworth] and Husband [Gary Hollingsworth]. Plaintiff is now suing Defendants in this Court under the R.I.C.O. Act, as a sole proprietor (personally and individually).

(Pl.'s Resp. to Defs.' Mot. to Dismiss Pursuant to [Fed. R. Civ. P.] 12(b)(6) at 7.)

In its opinion affirming the dismissal of the state case, the Tennessee Court of Appeals noted that

> TOTS, Inc. argues on appeal that after its corporate status was administratively dissolved, Mr. Brooks simply chose to operate as a sole proprietorship rather than

8

> a corporation. TOTS apparently claims that Mr. Brooks was conducting business as a sole proprietor, not a corporation, when he contracted with Defendants. It argues that the trial court "erred in ruling that Plaintiff was not authorized to conduct business in Tennessee as a sole proprietor." We find no such ruling in the record before us. Although we do not have a transcript of the trial court's hearing on the motions, the court's order does not mention any argument by Plaintiff that Mr. Brooks was operating as a sole proprietor. In fact, TOTS, Inc. repeatedly represented to the court that Mr. Brooks was attempting to conduct business as a corporation. Its complaint stated that TOTS, Inc. was "a Tennessee corporation *doing business as same* in Madison County, Tennessee, at all times relevant to this matter." (emphasis added). TOTS, Inc.'s motion to amend clearly states that "unbeknown to Plaintiff, its corporate status was not in compliance with the State of Tennessee requirements for valid corporate status." The motion further stated that the payments at issue were made "by Isaac Brooks, *believing he was a proper corporate entity*." (emphasis added). Thus, TOTS, Inc. cannot now argue that Mr. Brooks was operating as a sole proprietor in dealing with Defendants.

(Reply in Supp. of Defs.' Mot. to Dismiss, Ex. 1 (Op. of Ct. of App. of Tenn. at Jackson) at 5 (footnote omitted).)

In Tennessee, "[t]he words 'privy' and 'privity' do not necessarily have the same meaning in the context of *res judicata* as they do in the context of contractual relationships." Acuity v. McGhee Eng'g, Inc., 297 S.W.3d 718, 735 (Tenn. Ct. App. 2008), *app. denied* (Aug. 17, 2009). For purposes of *res judicata*, privity does not denote a legal relationship between the parties. Rather, "privity concerns a shared identity of interests relating to the subject matter of the litigation." Keszthelyi v. United States, No. 1:05-cv-303, 2011 WL 1884007, at *14 (E.D. Tenn. May 17, 2011). "In other words, privity is not established by parties being legally connected, either by contract, blood, or some other means, but rather whether they can claim the same legal rights asserted to the subject matter." McKennon v. Patel, No. 3:10-CV-246, 2011 WL 887727, at *4 (E.D. Tenn. Mar. 14, 2011). "The existence of privity or identity of interest depends upon the facts of each case." Acuity, 297 S.W.3d at 735.

While the exact legal relationship between T.O.T.S., Inc., TOTS and Brooks is somewhat

9

murky, perhaps intentionally so, one thing is clear. They unquestionably claim the same legal rights asserted to the subject matter of the state court suit and this federal action. Indeed, the Plaintiff states in his response to the motion that he "is the entity with all the interest in the acts and business relationship with Defendants that was lacking before." Thus, they are privies for purposes of *res judicata.*

Furthermore, as for Gary Hollingsworth, although he was not a defendant in the state court action,

> [w]here a plaintiff has sued parties in serial litigation over the same transaction; where plaintiff chose the original forum and had the opportunity to raise all its claims relating to the disputed transaction in the first action; where there was a "special relationship" between the defendants in each action, if not complete identity of parties; and where although the prior action was concluded, the plaintiff's later suit continued to seek essentially similar relief -- the courts have denied the plaintiff a second bite at the apple.

Wilson v. Todd, 178 F. Supp. 2d 925, 927-28 (W.D. Tenn. 2001) (quoting Lubrizol Corp. v. Exxon Corp., 871 F.2d 1279, 1288 (5th Cir. 1989)), *aff'd* 53 F. App'x 744 (6th Cir. 2002). The Court concludes, therefore, that the addition of Gary Hollingsworth to this case does not militate a finding against claim preclusion.[4]

The Court is convinced based on the information before it that both proceedings involve the same cause of action. Brooks suggests that his claims of extortion in the two cases are not the same based on the differing amounts sought -- $500,000 in the state case and $1 million in the instant matter. However, as noted above, the state action was filed in February 2008. No facts alleged in this case occurred after January 2008. He also points out that this suit, unlike that filed in state

---

[4] Indeed, the Plaintiff has presented no argument whatever in response to the Defendants' position on preclusion relative to Mr. Hollingsworth.

court, contains a RICO claim. That fact does him no good, however, as a RICO claim could have been brought in the state action. *See* Tafflin v. Levitt, 493 U.S. 455, 467, 110 S. Ct. 792, 799, 107 L. Ed. 2d 887 (1990) (state courts have concurrent jurisdiction over civil claims arising under RICO), *reh'g denied*, 495 U.S. 915, 110 S. Ct. 1942, 109 L. Ed. 2d 305 (1990); Savarirayan v. White Cnty. Cmty. Hosp., No. 2:07-0055, 2009 WL 362462, at *5 (M.D. Tenn. Feb. 10, 2009) ("it is well settled that claims under RICO may be properly brought in either state or federal court"). Accordingly, there is nothing to indicate that any of the claims raised herein could not have been included in the former suit. *See* Barnett, 215 S.W.3d at 834-35, *supra.*

For the reasons set forth herein, the motion to dismiss is GRANTED. The Defendants' pending motion for sanctions will be referred to the magistrate judge by separate order.

IT IS SO ORDERED this 28th day of June 2011.

                                                  s/ J. DANIEL BREEN
                                                  UNITED STATES DISTRICT JUDGE